IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| ROBERT A. CERVANTES, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 3:09-0975 |
| ) | Judge Nixon |
| NASHVILLE MACHINE ELEVATOR ) | Magistrate Judge Knowles |
| COMPANY, INC., ) | |
| ) | JURY DEMAND |
| Defendant. ) | |
| ) | |

## ORDER

Pending before the Court is Defendant Nashville Machine Elevator Company, Inc.'s ("Defendant") Motion for Summary Judgment (Doc. No. 14) ("Defendant's Motion"), filed with a supporting Memorandum (Doc. No. 15) and Statement of Facts (Doc. No. 16). Plaintiff Robert A. Cervantes ("Plaintiff") has filed a Response in Opposition (Doc. No. 21) and a Response to Defendant's Statement of Facts (Doc. No. 24-1). Defendant submitted a Reply (Doc. No. 26).

Also pending before the Court is Plaintiff's Rule 56(f) Motion for an Order staying decision on Defendant's Motion for Summary Judgment pending receipt of the deposition transcripts of twelve named witnesses (Doc. No. 23). In his motion dated October 22, 2010, Plaintiff stated that he anticipated receiving the transcripts of those depositions in "approximately seven to ten days," and that he would be able to supplement his response within three days of his receipt of those transcripts. *Id.* On December 15, 2010, Plaintiff filed six exhibits, constituting excerpts of the deposition testimony of six of the twelve named witnesses. Given that Plaintiff has apparently received at least six of the twelve deposition transcripts, has had ample time to receive the

deposition transcripts and supplement his filings per his Rule 56(f) Motion, and has not requested additional time beyond that in his original Rule 56(f) Motion, the Court accordingly finds Plaintiff's Rule 56(f) Motion **MOOT**.

For the reasons stated herein, the Court hereby **GRANTS in part** and **DENIES in part** Defendant's Motion for Summary Judgment.

**I. BACKGROUND**

*A. Procedural History*

On October 16, 2009, Plaintiff filed a Complaint against Defendant under 42 U.S.C. § 1981; Title VII, 42 U.S.C. § 2000e; and the Tennessee Human Rights Act, Tenn. Code Ann. § 4-21-101 *et seq.* (Doc. No. 1). Plaintiff alleged that Defendant violated his civil rights by discriminating against him in the re-hiring process, fostered a racially hostile work environment, and retaliated against him for his prior complaints regarding discrimination. In response, Defendant filed this Motion for Summary Judgment stating that there are no genuine issues as to any material fact and that it is entitled to judgment as a matter of law. This Court has jurisdiction under 28 U.S.C. §§ 1331, 1343, and 1367.

*B. Factual History*[1]

Plaintiff is a Hispanic male who was born in the United States and whose parents were both born in the United States. Defendant performs elevator installation and maintenance services; Defendant operates in the construction industry and it is common for its workers to use rough language and coarse humor in the workplace. Defendant first hired Plaintiff in 1999. Defendant

---

[1] Unless otherwise noted, all facts in this section are undisputed and are taken from Plaintiff's Corrected Response to Defendant's Statement of Undisputed Material Facts (Doc. No. 24-1).

periodically lays off employees and re-hires them again as economic and other conditions dictate; Plaintiff was laid off and re-hired on four occasions between 1999 and 2006. In 2006, Defendant terminated Plaintiff for excessive absenteeism. In July of 2007, Defendant re-hired Plaintiff. Defendant claims that Plaintiff was re-hired because Samuel R. Chitty (Defendant's General Manager) believed, based on Plaintiff's personal assurances, that Plaintiff had completed alcohol rehabilitation and could be counted on not to have absenteeism issues going forward. (Doc. No. 17-5 at 1-2.) Plaintiff disputes this; he claims that he was re-hired in July 2007 because Larry Skinner, Plaintiff's supervisor, recommended to Mr. Chitty that Plaintiff be re-hired because Plaintiff was qualified to do the job. (Doc. No. 17-2 at 47.)

Employees in Plaintiff's former position normally progress at Nashville Machine Elevator Company by completing a probationary period, then progressing through the levels of First Year Helper, Second Year Helper, Third Year Helper, and Fourth Year Helper. Fourth Year Helpers are eligible to take classes followed by a test to become a Mechanic. Plaintiff took and failed the Mechanic test four times. In accordance with Defendant's contract with the International Union of Elevator Constructors Local No. 93 (of which Plaintiff is a member) (the "Union"), Plaintiff was demoted back to Third Year Helper following his fourth failure of the Mechanic test and his pay was reduced, effective January 16, 2009.

In early 2009, the downturn in the economy led to a substantial drop in the volume of elevator installation work Defendant was doing. As a result, Defendant was overstaffed. To adjust for this downturn in work, Defendant laid off a total of 42 workers over the course of March, April, and May of 2009, including Plaintiff. Plaintiff was laid off on May 11, 2009. Mr. Chitty decided the order in which the employees would be laid off, and the dates when they would be laid off.

Plaintiff does not dispute that Mr. Chitty did not consider the race or national origin of Plaintiff or any other employee in making these layoff decisions. By the end of May 2009, Defendant had laid off approximately three-fourths of its workforce.

Between May 11, 2009 and mid-2010, Defendant experienced an increase in its elevator installation work that it determined was sufficient to justify rehiring 16 of the 42 workers who had been laid off in March, April, and May of 2009. Plaintiff was not among those rehired.

Defendant claims that Mr. Chitty rehired employees by the following process: Mr. Chitty would obtain and review a list prepared by the Union of employees who were available to be hired by Defendant. Mr. Chitty would identify the employees on that list who had been laid off by Defendant during the last year. Mr. Chitty would then select for re-hire the employee who, in his judgment, had been the most productive and best performer during his prior employment with Defendant. (Doc. No. 17-5 at 3.) Plaintiff disputes this, stating that Mr. Skinner had the final decision (or at least substantial influence) as to who was re-hired. (Doc. No. 17-2 at 48-51; Doc. No. 27-1 at 4.)

In making the determination of which employee to re-hire, Mr. Chitty would review the contents of all the eligible employees' personnel files and assess their attendance and disciplinary records. Occasionally, he would also solicit the opinions of mechanics who had worked with a particular employee as to whether they would want to work with that employee again, based on their experience.

Defendant claims that Plaintiff was not re-hired because, in Mr. Chitty's judgment, other eligible employees whom he reviewed had been more productive employees than Plaintiff while they were employed by Defendant. Two factors that influenced this judgment were Mr. Chitty's

perception that, prior to the layoff, Plaintiff often worked less than the full 40 hours per week that he was expected and scheduled to work, and the fact that Plaintiff had failed the Mechanic test repeatedly and was, after ten years of employment with Defendant, still only a Third Year Helper. (Doc. No. 17-1 at 51; Doc. No. 17-5 at 3-4.) Plaintiff disputes this; he claims that Mr. Chitty ranks the eligible employees based on his criteria but destroyed the lists of such rankings regarding this re-hiring even though he knew about Plaintiff's charges of discrimination. (Doc. No. 17-1 at 57-60.) Plaintiff also claims that since his re-hire in 2007, he has been sober with no criminal trouble or performance issues, and that it is not uncommon for Defendant to hire or re-hire employees with criminal records. (Doc. No. 17-3 at 18-19.) Plaintiff claims that had Mr. Chitty talked to mechanics and other employees who had worked with Plaintiff previously, Mr. Chitty would not have uncovered complaints about Plaintiff's job performance. (Doc. No. 24-1 at 8.)

Defendant also claims that, during the pendency of this lawsuit, Mr. Chitty learned for the first time of Plaintiff's multiple past convictions for possession of cocaine, and decided that because of these convictions, Plaintiff would no longer be eligible for re-hire by or employment with Defendant. (Doc. No. 17-5 at 4.) Plaintiff appears to dispute this by claiming that this reason is pretextual, as it is not uncommon for Defendant to re-hire employees with criminal records, and citing the fact that Defendant has not taken steps to determine how many of its current employees have criminal records. (Doc. No. 17-2 at 82-85; Doc. No. 17-1 at 60-65.)

Plaintiff claims that Mr. Skinner harassed him on a near-daily basis, including calling Plaintiff "a goddamn fat Mexican," "the closest thing to a nigger," "Julio," and "Mexican," and rarely referring to Plaintiff by his name. (Doc. No. 17-3 at 35-37.) Plaintiff claims that he complained of discrimination and harassment based on his race and/or national origin by Mr.

Skinner to Mr. Skinner, Mr. Chitty, and his union representatives, including Timothy Schultz. *Id.* at 37-38. Mr. Schultz testified that he heard Mr. Skinner refer to Plaintiff as "Mexican, fat Mexican, possibly wetback," and that he called Mr. Chitty to discuss Plaintiff's complaints about the harassment by Mr. Skinner. (Doc. No. 27-4 at 2.) Plaintiff also stated at his deposition that Mr. Skinner made derogatory and discriminatory comments to other workers, and was generally rude to everyone in the workplace. (Doc. No. 17-3 at 35-50.)

Plaintiff filed an EEOC Charge of Discrimination after he was laid off by Defendant in May of 2009. In response, Mr. Chitty investigated Plaintiff's allegations by interviewing four of Plaintiff's co-workers whom Mr. Chitty believed would have had an opportunity to observe interactions between Plaintiff and Mr. Skinner. (Doc. No. 17.-5 at 4-5.) Those four employees denied witnessing the discriminatory and racial harassment by Mr. Skinner of Plaintiff as described in the Charge; Mr. Chitty had himself never witnessed such behavior and accordingly determined that the allegations were likely untrue. The names of the four employees interviewed by Mr. Chitty as part of his investigation were provided to him by Mr. Skinner as employees who had most recently worked with Plaintiff. (Doc. No. 17-1 at 19.)

Plaintiff filed an EEOC Charge of Discrimination and demanded his Right to Sue letter. (Doc. No. 1 at 4.) He filed this lawsuit on October 16, 2009.

## II.  STANDARD OF REVIEW

Summary judgment is rendered when "there is no genuine issue as to any material fact and . . . the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party must demonstrate that the non-moving party has failed to establish a necessary element of that

party's claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Summary judgment will be granted if "the evidence is so one-sided that one party must prevail as a matter of law." *Lexington-South Elkhorn Water Dist. v. City of Wilmore*, 93 F.3d 230, 233 (6th Cir. 1996). The movant has the initial burden of informing the district court of the basis of the summary judgment motion and identifying portions of the record which lack a genuine issue of material fact to support the non-movant's case. *See Celotex*, 477 U.S. at 323.

The non-moving party may not rest solely on the allegations in the complaint, but must delineate specific evidence that shows there is a genuine issue for trial. *See id.* at 324. A "mere possibility" of a factual dispute is not sufficient to withstand a properly supported motion for summary judgment. *Baird v. NHP Mill Creek Apartments*, 94 F. App'x 328, 330-31 (6th Cir. 2004) (quoting *Gregg v. Allen-Bradley Co.*, 801 F.2d 859, 863 (6th Cir. 1986)). The non-moving party must show more than "some metaphysical doubt as to the material facts." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)). Furthermore, a dispute about a material fact is genuine if a reasonable factfinder could find for the non-moving party. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).

All reasonable inferences are to be drawn in favor of the non-moving party and the evidence of the non-movant is to be believed. *Id.* at 254. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . on a motion for summary judgment." *Id.* If the court determines that a reasonable factfinder would not find for the non-moving party, summary judgment must be granted. *See Matsushita*, 475 U.S. at 249-50.

**III.    DISCUSSION**

   *A.    Race and National Origin Discrimination*

Plaintiff claims that Defendant subjected him to racial and national origin discrimination in violation of Title VII, Section 1981, and the THRA by not re-hiring him after his May 2009 layoff.[2]

In order to prove a case of racial or national-origin discrimination in employment under Title VII, a plaintiff may present direct evidence of that discrimination, or may use circumstantial evidence to prove his case within the framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) and *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248 (1981).  Under this latter approach, a defendant must establish a prima facie claim by showing that: 1) he is a member of a protected group; 2) he was subject to an adverse employment decision; 3) he was qualified for the position; and 4) he was replaced by a person outside the protected class, or he was treated differently than similarly-situated non-protected employees.  *Russell v. University of Toledo*, 537 F.3d 596, 604 (6th Cir. 2008).  If the plaintiff establishes a prima facie claim, this "creates a rebuttable presumption, and the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for taking the challenged employment action.  If the defendant satisfies this burden, the plaintiff must then prove that the proffered reason was actually a pretext to hide unlawful discrimination." *Id.* (citing *Newman v. Fed. Express Corp.*, 266 F.3d 401, 406 (6th Cir. 2001) (internal citations omitted).

Defendant claims that Plaintiff's claim of national origin discrimination must fail because Plaintiff and his parents were born in the United States, and Plaintiff is not alleging that he was

---

[2] The Court agrees with Defendant that Plaintiff has apparently abandoned his claim that the initial decision to lay him off was discriminatory.  *See* Doc. No. 15 at 10 n.3; Amended Complaint

treated worse than other employees who were born in the United States. Defendant does not cite any support for the proposition that this renders Plaintiff's claim of national origin discrimination insufficient to proceed. Plaintiff testified in his deposition that his ancestry is Mexican (Doc. No. 17-4 at 140-41), and the Court notes that the EEOC's own website includes in the description of what constitutes "national origin" an "individual's . . . ancestry [or] culture." Equal Employment Opportunity Commission, Facts About National Origin Discrimination, http://www.eeoc.gov/eeoc/publications/fs-nator.cfm. Accordingly, the Court declines to adopt Defendant's understanding of the meaning of national origin discrimination.

In any event, Plaintiff claims that he was unlawfully discriminated against because of his Mexican ancestry and/or Hispanic race. He is a member of a protected class, qualified for the position as a Third-Year Helper, and the failure of Defendant to re-hire him constitutes, under these circumstances, an adverse employment action. In order to make out his prima facie case of such discrimination, he must put forth evidence regarding a similarly-situated employee, not a member of either protected class, who was treated differently than he was (*i.e.*, was re-hired following layoff).

Defendant claims that Plaintiff "has not identified any employee who was selected by Mr. Chitty for re-hire . . . who had as many shortcomings—including failing the mechanic test and therefore remaining stuck at the Third Year Helper level after ten years of employment, combined with frequently working less than the scheduled 40 hours per week—as Plaintiff did." (Doc. No. 15 at 11.) Plaintiff notes in his response that, "[t]o date, Defendant has brought back to work approximately twelve workers, none of which is Hispanic" (Doc. No. 21 at 5), citing the Amended Complaint (Doc. No. 11). However, the Court has repeatedly examined Plaintiff's Response and

---

(Doc. No. 11 at 3); Doc. No. 17-4 at 20.

the filings in this case, and Plaintiff does not appear to have named any similarly-situated employee, not a member of the protected class, who was re-hired by Defendant.

Plaintiff has only pointed to his initial allegation that none of the re-hired workers were Hispanic. However, he has not alleged that any of the non-Hispanic re-hired workers were similar to him in the relevant aspects: that any had a history of absenteeism or had repeatedly failed the Mechanic test. Since Defendant claims that these were the factors that animated Mr. Chitty's decision not to re-hire Plaintiff, in order to make out his prima facie case, Plaintiff must point to an employee who was re-hired despite these (or similar) factors. This he has not done.

Accordingly, the Court must conclude that Plaintiff has not made out a prima facie case of race and national origin discrimination regarding the decision not to re-hire him subsequent to his May 2009 layoff, and accordingly **GRANTS** Defendant's Motion for Summary Judgment as to this claim.

    *B.    Retaliation*

Plaintiff also claims that he was retaliated against by Defendant in the re-hiring process for his prior complaints of discrimination and a racially-hostile environment in violation of Title VII. In order to show a prima facie case for retaliation, a plaintiff must show: 1) he engaged in activity protected by Title VII; 2) the exercise of the plaintiff's civil rights was known by the defendant; 3) the defendant thereafter took an adverse employment action against the plaintiff; and 4) there was a causal connection between the protected activity and the adverse employment action. *Arendale v. City of Memphis*, 519 F3d 587, 606 (6th Cir. 2008).

Defendant claims that Plaintiff has failed to establish a causal connection between his filing complaints of discriminatory harassment by Mr. Skinner and Defendant's decision not to re-hire

him. This Court agrees.

In order to establish causal connection, Plaintiff must produce enough evidence to create the inference that the adverse action would not have taken place if he had not engaged in the protected activities. *See Hill v. Airtran Airways, Inc.*, No. 3:08-cv-195, 2009 U.S. Dist. Lexis 51827, at *27 (S.D. Ohio June 19, 2009) (noting that to show causal connection "a plaintiff must produce sufficient evidence from which an inference could be drawn" that the adverse employment action would not have taken place if the plaintiff did not engage in the protected conduct). Plaintiff bears the burden of showing the protected activity motivated the adverse action. *Sowards v. Loudon County*, 203 F.3d 426, 433-34 (6th Cir. 2000) (citing *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc)). To survive Defendant's Motion for Summary Judgment, Plaintiff must allege facts sufficient to create a genuine issue regarding his claim that the filing of his previous Charge and lawsuit motivated his termination. The temporal proximity between engaging in the protected activity and suffering from the adverse employment action is one way to establish a causal connection. *Van Richardson v. Burrows*, 885 F. Supp. 1017, 1023 (N.D. Ohio 1995). Although not dispositive, temporal proximity considered with other evidence may prove retaliation. *Nguyen v. City of Cleveland*, 229 F.3d 559, 566 (6th Cir. 2000). If Plaintiff meets the causation burden, then the burden shifts to Defendant to show, by a preponderance of the evidence, that the adverse action would have occurred absent the protected activities. *Sowards*, 203 F.3d at 431 (citing *Kreuzer v. Brown*, 128 F.3d 359, 363 (6th Cir. 1997)).

In *Nguyen*, the Sixth Circuit held that the plaintiff failed to establish a retaliation claim because he did not present sufficient evidence from which a jury could infer that the adverse employment action was substantially motivated by the protected activity. 229 F.3d at 567. Nguyen

brought suit against the City of Cleveland for failure to promote based upon his filing of grievances with the EEOC, a protected activity. On appeal from the district court's decision, Nguyen asserted that the temporal proximity between the filing of the grievances and the failure to promote, on its own, sufficiently established causation for the retaliation claim. *Id.* at 565. However, the Sixth Circuit rejected Nguyen's interpretation of the requirements of causation. *See Parnell v. West*, No. 95-2131, 1997 WL 271751, at *2 (6th Cir. May 21, 1997) ("a causal link can be shown by either of two methods: (1) through direct evidence; or (2) through knowledge coupled with a closeness in time that creates an inference of causation . . . . However, temporal proximity alone will not support an inference of retaliatory discrimination when there is no other compelling evidence"). Temporal proximity must be coupled with other compelling evidence to establish causal connection. Nguyen's retaliation claim failed because he did not produce additional evidence from which retaliation for filing the EEOC grievances could be inferred. 229 F.3d at 567. *See also Arendale*, 519 F.3d at 606. Similarly, here Plaintiff must show some evidence beyond mere temporal proximity to support his causation claim.

It appears to the Court that Plaintiff complained to Mr. Chitty regarding his treatment by Mr. Skinner shortly after his return to employment with Defendant in the summer of 2007. (Doc. No. 17-3 at 38, 94-95.) Plaintiff also complained to his union representative, Mr. Schultz, regarding Mr. Skinner's treatment in April or May of 2009. (Doc. No. 17-4 at 22; Doc. No. 27-4 at 2.) Mr. Schultz testified at his deposition that he mentioned Mr. Skinner's harassment (but not the racially-derogatory aspects of that harassment) to Mr. Chitty after that conversation but before Plaintiff was laid off. (Doc. No. 27-4 at 2.) Plaintiff was subsequently laid off on May 11, 2009. Defendant began re-hiring employees subsequent to Plaintiff's layoff, through mid-2010. This temporal

proximity, hazy as it is, is the only evidence Plaintiff has put forth to establish the causal connection between his complaints regarding Mr. Skinner's treatment and the subsequent decision not to re-hire him.

While this is a close question, the Court is ultimately persuaded that Plaintiff has at least arguably made out a prima facie case of retaliation. The amount of time between a protected activity and an adverse employment action can be sufficient to give rise to an inference of causation. *See Evans v. Prospect Airport Servs.*, 286 Fed. Appx. 889, 895 (6th Cir. 2008) (distinguishing an immediate firing in a previous case from a firing almost a year after a third EEOC complaint was filed and finding the latter insufficient to give rise to an inference of causation). In the only case Plaintiff cites on this issue, *DiCarlo v. Potter*, 358 F.3d 408 (6th Cir. 2004), a recommendation made to terminate an employee made thirteen days after the employee filed an EEOC Charge was found to be sufficient to give rise to an inference of retaliatory motive. In this instance, Plaintiff complained to his supervisors and approached his union representative regarding the harassing treatment by Mr. Skinner shortly before he was laid off. Defendant has asserted that the re-hires in question occurred between May 11, 2009 and mid-2010 (Doc. No. 24-1 at 5). Without more information regarding the time frame of both the complaints and the re-hires (which constitute the adverse employment action), the Court must conclude that re-hires could have begun as soon as Defendant was laid off, which would constitute temporal proximity sufficient to give rise to an inference of causation.

Defendant has submitted that its decision not to re-hire Plaintiff was not based on the complaints he made regarding Mr. Skinner's treatment but rather that other employees were more productive than Plaintiff had been, citing his history of absenteeism and his repeated failures of the

Mechanic exam.  The burden then shifts back to Plaintiff to put forth enough evidence to allow a reasonable finder of fact to conclude that Defendant's reasons are pretextual.  While this Court agrees with Plaintiff that it should use caution in granting summary judgment once a prima facie case of retaliation is established, *see Singfield v. Akron Metro. Housing Authority*, 389 F.3d 555, 563-65 (6th Cir. 2004), Plaintiff must be able to provide the ultimate finder of fact with at least some evidence of pretext in order to make his case.  The Court has not found any such evidence, and Plaintiff does not appear to point to any.  Accordingly, the Court hereby **GRANTS** Defendant's Motion for Summary Judgment as to Plaintiff's retaliation claim.

    *C.*    *Hostile Work Environment*

Plaintiff alleges that he was subjected to a hostile work environment in violation of Title VII and the THRA.  (Doc. No. 11 at 4-5.)

In order to prevail in a hostile work environment case, a plaintiff must prove that 1) he is a member of a protected group; 2) he was subject to unwelcome harassment; 3) the harassment was based on his protected status; 4) the employer knew or should have known of the charged harassment and failed to implement prompt, corrective action.  *Farmer v. Cleveland Pub. Power*, 295 F.3d 593, 604-05 (6th Cir.  2002) (abrogated on other grounds, *White v. Columbus Metro. Housing Auth.*, 429 F.3d 232, 238 (6th Cir. 2005)).  A hostile work environment exists when "the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment."  *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 *1993).

Defendant claims that Plaintiff has not presented sufficient evidence of conduct that was sufficiently severe and pervasive to support a claim of hostile work environment.  For the

contention, Defendant primarily relies upon a Fifth Circuit case, *Vaughn v. Pool Offshore Co.*, 683 F.2d 922 (5th Cir. 1982). The Fifth Circuit found a lack of hostile work environment where there was a "coarse, rowdy, and generally abusive" work environment and the plaintiff was not singled out for such treatment, although his mistreatment did involve the use of racial slurs. *Id.* at 924-25. Central to the court's conclusion in that case that the district court had not committed clear error by finding no hostile work environment was the fact that employees of all races were subjected to the same treatment (and that Vaughn himself used racial slurs), indicating no race-based motivation. *Id.* The court also relied heavily upon the plaintiff's subjective belief that his treatment was not racially motivated and that he was not singled out for abuse because of his race. *Id.*

The Court finds *Vaughn* distinguishable. While workers in the construction industry may use rough language and coarse humor in the workplace, the Court declines to find, as in *Vaughn*, that Mr. Skinner's treatment of Plaintiff (as alleged by Plaintiff) was without animus and just part of "life on the rig." *Id.* at 925. Plaintiff repeatedly complained about Mr. Skinner's treatment of him and asserts that that treatment was based on his race and national origin (undermining the central underpinning of Vaughn that the plaintiff did not believe his mistreatment was racially motivated and that there was no animus). There is no evidence that Plaintiff took part in the use of racial slurs against others, his employment in the construction industry notwithstanding; Mr. Schultz testified at his deposition that, while using swear words may be common in his 26 years of experience in the construction industry, the use of racial slurs is not. (Doc. No. 27-4 at 4.) While it does appear that Mr. Skinner was "a jerk" to employees other than Plaintiff, it appears that much of that behavior also consisted of racial slurs directed at African-American employees. (Doc. No. 27-4 at 3; Doc. No. 17-3 at 43.) The Court declines to decide as a matter of law that one supervisor, using racial

slurs against multiple employees, can singlehandedly render a working environment so "rowdy" and "coarse" that such treatment must be expected and cannot constitute a hostile work environment. *See Watkins v. Texas CES, Inc.*, No. 4:08-CV-243-Y, slip op. at 6 n.12 (N.D. Tex. Oct. 26, 2009) ("This Court additionally notes that *Vaughn* was decided in 1982. The Court hopes that more than twenty-five years after *Vaughn*, this type of incendiary and patently offensive language cannot be viewed as "routine" or as mere "rowdiness" in any type of work environment.") The evidence Plaintiff has submitted is sufficient to raise a fact question regarding whether the harassment was severe or pervasive.

Accordingly, the Court declines to find that no reasonable jury could conclude that Plaintiff was subjected to a hostile work environment based on race or national origin under Title VII and the THRA. The Court therefore **DENIES** Defendant's Motion for Summary Judgment on that ground.

## IV. CONCLUSION

For the foregoing reasons, the Court finds that Plaintiff has not produced sufficient evidence to demonstrate a genuine issue of material fact regarding his discrimination and retaliation claims, but has produced such evidence regarding his hostile work environment claim. Accordingly, Defendant's Motion for Summary Judgment is **GRANTED in part** and **DENIED in part**.

It is so ORDERED.

Entered this __4th_____ day of __January_____, 20_11__.

JOHN T. NIXON, SENIOR JUDGE
UNITED STATES DISTRICT COURT